LEIGH WHITE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 36005. Filed June 17, 1954.

*George Craven, Esq.*, and *James F. Gordy, Esq.*, for the petitioner.
*Max Hamburger, Esq.*, for the respondent.

OPINION.

BAAR, *Judge:* To support his contention that he was a bona fide resident of a foreign country or countries for a period of at least 2 years before the date on which he reestablished his residence in the United States the petitioner puts forth two arguments. First, he argues that he was a resident of foreign countries continuously from 1937 to 1946, and that his presence in the United States during the period October 12, 1941, to August 2, 1944, for the purpose of securing medical treatment, did not constitute a break in his foreign residence. Our finding is to the contrary. In the alternative, the petitioner argues that he was a bona fide resident of foreign countries from August 2, 1944, at least until August 21, 1946, or until May 2, 1947. Whatever the date of the establishment of the petitioner's residence in the United States, which in our opinion occurred on or before August 21, 1946, we have found that not later than July 8, 1946, the petitioner ceased to be a resident of a foreign country.

The respondent also takes a position which we reject, although we sustain his determination of deficiency. He argues, first, that the petitioner did not become a resident of Moscow in 1944, and second, that his residence in Rome, if any, was terminated upon his return to the United States on May 27, 1946. Both of these contentions are opposed by our findings.

The question for our decision is one of ultimate fact, to be determined by the interpretation of the undisputed evidence, in the light of the applicable statute and implementing regulations, as in effect for the taxable year 1946, which are set out in the margin.[1]

---

[1] Internal Revenue Code:

SEC. 116. EXCLUSIONS FROM GROSS INCOME.

In addition to the items specified in section 22 (b), the following items shall not be included in gross income and shall be exempt from taxation under this chapter:

(a) EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES.—

＊　　　＊　　　＊　　　＊　　　＊　　　＊　　　＊

(2) TAXABLE YEAR OF CHANGE OF RESIDENCE TO UNITED STATES.—In the case of an individual citizen of the United States, who has been a bona fide resident of a foreign country or countries for a period of at least two years before the date on which he changes his residence from such country to the United States, amounts received from

The term "income from sources without the United States" is not defined in the quoted statute, but the situation here presented is governed by section 119 (c) (3), Internal Revenue Code, and section 29.119–7 (3), Regulations 111. As in effect during 1946, they provide that compensation for personal services performed without the United States is to "be treated as income from sources without the United States," regardless of the location of the employer.

The statute also lacks any definition of the term "residence," but the meaning of that term is explained at length in the quoted regulations. It has been stated that these regulations are "entitled to great weight," and that they are "especially authoritative." *Commissioner* v. *Nubar*, (C. A. 4, 1950) 185 F. 2d 584, 587; *Seeley* v. *Commissioner*, (C. A. 2, 1951) 186 F. 2d 541, 543. It is made clear by many decisions that the term is not to be confused with "domicile," and that it includes a temporary residence, where an extended stay is contemplated although there is at all times an intention thereafter to return to a former residence or to establish a new residence elsewhere. Even the absence of any "settled place of abode" does not preclude the existence of a "residence." *Swenson* v. *Thomas*, (C. A. 5, 1947) 164 F. 2d 783. On the other hand, for the present purpose it has been held that "an intention to live in the place for the time being" is an essential element of "residence." *Robert W. Seeley*, 14 T. C. 175, 180 (1950).

---

sources without the United States (except amounts paid by the United States or any agency thereof), which are attributable to that part of such period of foreign residence before such date, if such amounts constitute earned income as defined in paragraph (3) : but such individual shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this subsection. [As amended by Revenue Act of 1942, secs. 148 (a) and 148 (b), and by Revenue Act of 1943, sec. 107 (b) (1)].

Regulations 111:

SEC. 29.116–1. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES.—* * * Whether the individual citizen of the United States is a bona fide resident of a foreign country shall be determined in general by the application of the principles of sections 29.211–2, 29.211–3, 29.211–4, and 29.211–5 relating to what constitutes residence or nonresidence, as the case may be, in the United States in the case of an alien individual.

* * * * * * *

SEC. 29.211–2. DEFINITION.—A "nonresident alien individual" means an individual—
(a) Whose residence is not within the United States ; and
(b) Who is not a citizen of the United States.

The term includes a nonresident alien fiduciary.

An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances.

It is also established that the term "residence" as used in this statute is to be interpreted in accordance with the legislative purpose, which was essentially to encourage our foreign trade by encouraging foreign employment of United States citizens. *Seeley* v. *Commissioner*, *supra; Swenson* v. *Thomas, supra; White* v. *Hofferbert*, (D. Md. 1950) 88 F. Supp. 457, 461, 462; *Arthur J. H. Johnson*, 7 T. C. 1040, 1046 (1946).

The term is best defined by the many and varied factual situations respecting which the application of this particular statute has been adjudicated in many cases, including, among others, those cited herein. For most recent decisions of this Court, see: *Burlin B. Hamer*, 22 T. C. 343; *Fred H. Pierce*, 22 T. C. 493.

The facts upon which we base our conclusion that the residence of the petitioner outside of the United States did not continue from 1937 to 1946, but was interrupted at some time between 1941 and 1944, are recited in our findings and need not be reviewed. At some time after he returned to the United States on October 12, 1941, in our opinion the petitioner abandoned his intention to leave this country otherwise than at some indefinite future date. He then ceased to be "a mere transient or sojourner" and became a resident, under section 29.211-2 of Regulations 111, and *Commissioner* v. *Nubar, supra*. His residence here continued until he left this country on August 2, 1944.

The requirements of the statute are not met by the fact that the petitioner was a resident of foreign countries for more than a period of 2 years, all of which elapsed "before the date on which he changed his residence" to the United States in 1946—namely, within the period between 1937 and 1944. The statute refers to a change of residence "from such country to the United States." This requires that the significant 2-year period of foreign residence shall continue until it is terminated by the "change of residence" occurring during the taxable year.

The statutory "change" necessarily consists of two elements—first, the termination of the foreign residence and, second, the establishment of a residence in the United States—but there is no suggestion in the statute that these two events must be simultaneous. Nor is there any implication that the second event must have occurred before the period of foreign residence can be regarded as ended, which would in this case require that the petitioner's foreign residence must be deemed to have continued until his residence in the United States was established. It seems to be possible that an individual may for some time have no "residence" at all, as that concept is distinguished from that of "domicile."

By our finding that a residence in a foreign country was established shortly after August 2, 1944, we reject the respondent's contention that

the petitioner intended only a temporary sojourn and not a permanent residence in Moscow when he went there in 1944, citing *Ernest Rudolf Hertig*, 19 T. C. 109 (1952). We conclude that this petitioner became a resident of Moscow in 1944 because he then intended to abandon his residence in the United States, if any, and thereafter to reside in Russia for "an extended stay," and elsewhere in Europe for an even longer period.

We sustain the respondent's determination of deficiency, however, upon the ground that the foreign residence was terminated before August 2, 1946, even though we reject his contention that it was ended on May 27, 1946, when the petitioner arrived in the United States. At that time and for some weeks thereafter the petitioner did not have the intention not to return, which is required to convert a physical departure from the country to an abandonment of a "residence" therein. *Seeley* v. *Commissioner, supra*. The requisite change of intention, however, had been completely accomplished on or before July 8, 1946.

When the petitioner was recalled from Rome in May 1946 it was his plan to persuade his employer to "resurrect" the Rome bureau and to send him back to Rome. But the petitioner was unsuccessful in this attempt, and was offered instead an opportunity to go to China, to which he gave consideration for some time. At some undisclosed date between May 27 and July 8, the petitioner apparently became convinced that his employer would not send him back to Rome. Thereafter he no longer had any intention or expectation of returning to Rome at any early date. The foreign residence therefore terminated at that time, within a period of less than the required 2 years.

The fact that the petitioner was continuously contemplating the possibility or probability of establishing a residence in some other foreign country, specifically China, did not serve to prolong his residence in Rome, nor to establish a residence in China or in any other foreign country. This precise question was decided in *Richard H. Lovald*, 16 T. C. 909, 914–915 (1951), which held that the taxpayer's residence in Honduras terminated about September 1945 while his alleged residence in China was not established until about March 1, 1946, even though in the interim the taxpayer definitely intended (or hoped) not to remain in the United States.

It is not necessary to our decision to find that the petitioner's residence within the United States began upon precisely the date of the termination of his residence in Rome. Such a distinction is not material under our view, but the petitioner relies upon the contention that he did not become a resident of the United States until after August 2, 1946. The evidence, however, fails to sustain this position.

We reject the contention that no residence in the United States was established until May 2, 1947, when the petitioner finally rejected the

proposal to send him to China, and instead have found that the petitioner became a resident of the United States on or before August 21, 1946. Even though he did not for several days thereafter reside in the home which he then purchased, certainly on that date if not earlier, while he was looking for a home and considering the purchase, and perhaps on or before July 8, the petitioner adopted the required intentions to cease to be a mere sojourner and to make his home temporarily in the United States for the period necessary to resolve the problems which were delaying his anticipated resumption of a foreign residence.

Concerning the payment of $93.68, the respondent has indicated his acquiescence in the petitioner's claim that this amount should be credited against the deficiency. Unlike a payment made in discharge of an assessment, which reduces the amount of the deficiency to be determined by this Court, the payment here in question is being carried in a "suspense account," awaiting the assessment of the deficiency against which it is to be applied. Our decision, therefore, is that the respondent's determination of the amount of the deficiency is sustained.

Reviewed by the Court.

*Decision will be entered for the respondent.*