ROBERT A. HENNINGSEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

R. A. AND MARGARET HENNINGSEN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 52544, 52545. Filed June 13, 1956.

*Carl E. Davidson, Esq.*, for the petitioners.
*Wendell M. Basye, Esq.*, for the respondent.

## OPINION.

Van Fossan, *Judge:* The main question here is whether the income received by petitioner from sources without the United States during 1946 and 1947 is excluded from taxation pursuant to the provisions of section 116 (a) of the Internal Revenue Code of 1939.[1]

The parties have stipulated that petitioner, an American citizen, was a bona fide resident of China, within the meaning of the cited

---

[1] SEC. 116. EXCLUSIONS FROM GROSS INCOME.

In addition to the items specified in section 22 (b), the following items shall not be included in gross income and shall be exempt from taxation under this chapter:

(a) EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES.—

(1) FOREIGN RESIDENT FOR ENTIRE TAXABLE YEAR.—In the case of an individual citizen of the United States, who establishes to the satisfaction of the Commissioner that he is a bona fide resident of a foreign country or countries during the entire taxable year, amounts received from sources without the United States * * * if such amounts constitute earned income * * *

(2) TAXABLE YEAR OF CHANGE OF RESIDENCE TO UNITED STATES.—In the case of an individual citizen of the United States, who has been a bona fide resident of a foreign country or countries for a period of at least two years before the date on which he changes his residence from such country to the United States, amounts received from sources without the United States * * *, which are attributable to that part of such period of foreign residence before such date, if such amounts constitute earned income * * *

statute, from October 1929 until November 1941. In November 1941, petitioner was relieved by Anker and returned to this country pursuant to the agreement he had with Harkson and Anker that they should rotate among them tours of duty in China. Shortly after petitioner's return, the United States declared war on Japan and petitioner did not go to China again until February 1946, from which he returned to the United States, arriving on December 6, 1947.

Although apparently conceding the bona fides of petitioner's residence in China during part of each of the taxable years, it is respondent's position that such residence was acquired by petitioner in February 1946; that petitioner's residence was changed back to the United States no later than December 6, 1947; and that, therefore, petitioner fails to come within the express provisions of the pertinent statute for either of the years in dispute. Such position is grounded upon respondent's view that petitioner abandoned his China residence upon his return to the United States in 1941 or at sometime thereafter prior to his going back to China in 1946.

Petitioner maintains that having acquired a bona fide residence in China in 1929, he continued to be a bona fide resident of such foreign country at all times until at least the date in 1947, at which time he came back to the United States. He contends that in the years 1941 to 1946, he consistently entertained the intention of returning to China, being prevented from doing so and held in this country against his will because of the war then existing. Alternatively, petitioner asserts that even if his bona fide China residence be considered as not having continued during the period of his enforced absence, he nevertheless was a bona fide resident of China during the year 1947.

We are here dealing with the question of residence, not with the question of domicile. Although residence and domicile each contain certain attributes of the other, they nevertheless are words of art and have distinct and different meanings in the law. This distinction has been pointed up in numerous cases. See, e. g., *Walter J. Baer*, 6 T. C. 1195; *Robert W. Seeley*, 14 T. C. 175, reversed in part and affirmed in part 186 F. 2d 541; *Leigh White*, 22 T. C. 585; *Commissioner* v. *Nubar*, 185 F. 2d 584, reversing 13 T. C. 566; *Neuberger* v. *United States*, 13 F. 2d 541. See also 1 Beale, Conflict of Laws sec. 10.3, p. 109. In the *Neuberger* case, *supra*, Judge Learned Hand pointed out that while a long voluntary period of absence may be conclusive in determining the abandonment of a residence once acquired, absence through constraint has no effect on it. Here, however, we are dealing with a specific statute and the meaning of the term "resident" as used therein. The legislative history of the statute with which we are thus concerned and the intent of Congress underlying its enactment have been traced and set forth on many occasions (see, e. g., *Leigh White, supra*; *C. Francis Weeks*, 16 T. C. 248; *Arthur J. H.*

*Johnson,* 7 T. C. 1040) and need not be repeated here. Suffice it to say that the criteria to be used in determining whether an alien has acquired residence in the United States are equally applicable in ascertaining the same with respect to a citizen thereof who has been a bona fide resident of a foreign country or countries. *Robert W. Seeley, supra; Commissioner* v. *Nubar, supra.* Such criteria are set forth in Regulations 111, section 29.211-2, as follows:

An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. * * *

Applying the foregoing criteria to the facts of this case, we are constrained to hold that petitioner abandoned his China residence when he came back to the United States in 1941 or shortly thereafter. Petitioner's return to this country was made pursuant to his agreement with Harkson and Anker. His obvious intent at that time was to remain in the United States and, temporarily at least, make it his residence until it again became time for him to serve another tour of duty in China—apparently some 2 years thereafter. Furthermore, it appears to be a fair inference that even this definite intent to return to China, after such necessarily extended stay in the United States, was abandoned after the outbreak of the war between Japan and the United States and replaced by a "mere floating intention, indefinite as to time," to return to China if and when such war was brought to a successful conclusion by the United States and her allies. Thus, albeit petitioner's return to China was rendered impossible by the circumstances of war, nevertheless, as was aptly observed in *Robert W. Seeley, supra,* at p. 182, "did he not then, from the time it was determined that conditions would not permit his return, fully intend to be a resident of the United States until those conditions were removed?" See also *Marsman* v. *Commissioner,* 205 F. 2d 335, modifying 18 T. C. 1. In our opinion, the facts here, as above outlined, admit of no answer to the quoted question other than in the affirmative.

Nor do we agree with petitioner's alternative contention that he was a resident of a foreign country or countries for at least the entire year 1947. Petitioner's argument is that although he left China and returned to the United States prior to the close of 1947, he definitely

intended to return abroad to the British crown colony of Hong Kong as soon as his Coca-Cola business there required his services, which intention he did not abandon until 1950. Albeit petitioner was a bona fide resident of China for a portion of 1947, the record does not disclose that he ever established a residence in Hong Kong. In fact, it appears that after his departure from China in 1947, he never was physically present in Hong Kong. He cites no authority and we know of none for the proposition that one may become a bona fide resident of a sovereignty different from that in which he has established such residence by a mere floating intention to do so in the indeterminate future. Moreover, what we have said above with regard to the question of the petitioner's continued residence in China during the war years is of equal application here insofar as the requirements of section 116 (a) (2) are concerned.

In view of the foregoing, therefore, it is our conclusion that the income earned by petitioner in 1946 and 1947 from sources without the United States is not to be excluded from taxation under either section 116 (a) (1) or (2), and respondent's determination is sustained.

Next is the question whether respondent is correct in his imposition of the addition to tax provided in section 291 (a) of the 1939 Code, for petitioner's failure to file a return in 1946. That petitioner properly entertained a sincere and honest belief that he was not required to file such return is patent. But, there is no showing that advice of counsel was in fact sought or relied upon. Mere uninformed and unsupported belief by a taxpayer, no matter how sincere that belief may be, that he is not required to file a tax return, is insufficient to constitute reasonable cause for his failure so to file. *Rafael Sabatini*, 32 B. T. A. 705, affd. 98 F. 2d 753. Wherefore, we have no recourse but to sustain respondent's action in the premises.

By amended petition, petitioner raises the additional question as to the year in which he is properly taxable on the $100,000 bonus paid him by the Produce Company. In this respect, we are of the opinion that on the facts found herein, the bonus in question was not unqualifiedly made subject to the demands of the petitioner at any time prior to January 15, 1947, albeit payment thereof was deducted by the Produce Company on its 1946 income tax return. Cf. *Avery* v. *Commissioner*, 292 U. S. 210; *Maurice Fox*, 20 T. C. 1094. By proper amendment of his pleadings, respondent has made timely claim for the increased deficiency in 1947 consequent on such holding. *Pierce Oil Corporation*, 30 B. T. A. 469; *Commissioner* v. *Ray*, 88 F. 2d 891, certiorari denied 301 U. S. 711; see also sec. 272 (e), I. R. C. 1939, and Rule 17 of this Court's Rules of Practice.

*Decisions will be entered under Rule 50.*