Meade A. **CARPENTER**, Jr., **Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

Civ. A. No. 6–277.

United States District Court,
N. D. Texas,
San Angelo Division.

Sept. 18, 1972.

Michael L. Cook, Clark, Thomas, Harris, Denius & Winters, Austin, Tex., Earl W. Smith, Hardeman, Smith & Kever, San Angelo, Tex., for plaintiff.

Frank D. McCown, U. S. Atty., William L. Johnson, Jr., Asst. U. S. Atty., Fort Worth, Tex., D. Wendell Barnett, Atty., Tax. Div., Dept. of Justice, Ben A. Douglas, Atty. in Charge, Tax Div., Dept. of Justice, Dallas, Tex., Scott P. Crampton, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

WOODWARD, District Judge.

The present action is for refund of income taxes allegedly assessed and collected illegally by defendant United States. This Court has jurisdiction under 28 U. S.C. § 1346(a)(1). The only claim here considered is for $2,064.86, plus interest, the plaintiff having announced in open court that he is no longer pursuing the claim for $927.65 prayed for in the alternative in the original complaint.

The case presents an interesting and novel fact situation involving earned income from sources without the United States, and the case must be decided by the Court according to the provisions of section 911(a) of the Internal Revenue Act of 1954, 26 U.S.C. § 911(a).[1] This section of the Code in effect provides for the exclusion of income earned abroad in situations where the taxpayer is a bona fide foreign resident for an uninterrupted period which includes an entire taxable year.

## FINDINGS OF FACT

Most of the facts in the present case are undisputed and are simply and easily recited. Plaintiff is a retired petroleum engineer residing in San Angelo, Texas, having received a degree in engineering

---

1. Sec. 911 provides in pertinent part as follows:
 (a) General rule.—The following items shall not be included in gross income and shall be exempt from taxation under this subtitle:
 (1) Bona fide resident of foreign country.—In the case of an individual citizen of the United States who establishes to the satisfaction of the Secretary or his delegate that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, amounts received from sources without the United States . . . which constitute earned income attributable to services performed during such uninterrupted period . . . .
 (2) Presence in foreign country for 17 months.—In the case of an individual citizen of the United States who during any period of 18 consecutive months is present in a foreign country or countries during at least 510 full days . . . ., amounts received from sources without the United States . . . which constitute earned income attributable to services performed during such 18-month period . . . .

from Texas Agricultural & Mechanical College in 1936. In 1954 plaintiff went to Kuwait and worked for the American Independent Oil Company as zone manager, returning to the United States for a vacation from April to August 1955 when he returned to Kuwait to work for the Getty Oil Company as a zone engineer. In 1956 plaintiff left Kuwait for Europe, where he remained until February 1957, at which time he returned to the United States until March 1958. At that time he traveled to Saudi Arabia to become employed by the Ministry of Petroleum, a branch of the Saudi Arabian government, in which capacity he remained until June 22, 1962. Plaintiff's duties involved serving as technical advisor to the Minister of Petroleum, including the performance of liaison work with the various oil companies doing business in Saudi Arabia. It is undisputed that plaintiff was a foreign resident from 1954 until June 22, 1962, and no question is raised here regarding the exclusion of plaintiff's income from taxation for the taxable years 1954 to 1963, inclusive.

On June 23, 1962, plaintiff left Saudi Arabia for the United States, where he remained until April 14, 1963. The primary question here presented for determination is whether plaintiff Carpenter was a "bona fide resident of a foreign country or countries," during his stay of approximately ten months in the United States, within the meaning of 26 U.S.C. § 911(a)(1).

Plaintiff was called as a witness by his own attorney and testified as the only witness at the trial on the merits. He testified that he left Saudi Arabia in June 1962 having done "all he could do" in his job as consulting engineer in Saudi Arabia and in a state of disgust over the overall political situation in Saudi Arabia. He testified that before leaving that country, he entered into an oral agreement with Abdullah H. Tariki, then Minister of Petroleum in Saudi Arabia, by which agreement the two parties were to form a partnership which would operate a petroleum consulting business operating out of Lebanon, consulting with several foreign governments regarding their oil-producing programs and specific problems regarding the petroleum industry. Defendant introduced no evidence nor elicited any evidence to contradict plaintiff's testimony that such an oral agreement was formulated and that plaintiff intended from the date of such agreement to return to the Middle East, and specifically to go to Lebanon, at a later date.

After a careful weighing of all the evidence presented to it, this Court finds that at the time plaintiff Carpenter left Saudi Arabia in June 1962, he had an oral agreement with Abdullah H. Tariki by virtue of which plaintiff entertained a definite intention to return to the Middle East as soon as Tariki had made the business arrangements necessary to the venture. The existence of this agreement was buttressed by the fact that while plaintiff was in the United States, Tariki was actively engaged in raising capital for the business venture. In arriving at this conclusion, the Court has not considered in any way any statement or letter of Mr. Tariki, as these items are tainted by a strong element of hearsay. It is plaintiff's uncontroverted and unimpeached testimony, on both direct and cross examination, which convinces the Court of the existence of the oral contract in question and of plaintiff's intentions in regard thereto.

Plaintiff testified that he was weary of his stay in Saudi Arabia and desired at that time at least a six-month vacation as well as a thorough medical checkup in the United States. This testimony as to his intention is supported by undisputed facts in the record regarding his visit to the United States.

Defendant seems to emphasize the fact that plaintiff purchased only a one-way airline ticket to the United States. But this fact carries little weight in view of the circumstances, including plaintiff's stated desire to remain in the United States for several months; it is reasonable to infer that a person in such a situation might very well not wish to

invest several hundred dollars in a return ticket which would be of no use whatsoever for such a period of time.

While in the United States, plaintiff Carpenter lived for the most part with his sister in San Angelo, Texas, in a house which the two of them had inherited from their mother in 1960. Plaintiff also took a pleasure trip to New Mexico and visited friends in other Texas cities during his stay in the United States. More significantly, plaintiff went to New Orleans, where he received a thorough physical examination at the Oschner Clinic. Since such examination was one of plaintiff's stated purposes for traveling to the United States, it is reasonable to infer, as this Court does, that the thorough and lengthy physical examination was undergone by plaintiff because he had the definite intention of returning to the Middle East where expert medical care might be much more difficult to obtain.

Plaintiff performed no services for remuneration while in the United States in 1962–63 and received no fees for earned income. He did visit a farm of which he was part-owner and received earnings from said farm as well as from other domestic investments, the status of which income is not brought into question in the present case.

Plaintiff and Abdullah Tariki did not discuss their partnership agreement again until early in 1963, during a visit by Tariki to Texas. At that time Tariki informed plaintiff that Tariki was still actively making arrangements for their planned business enterprise to begin full and profitable operation. The fact that plaintiff did not discuss the alleged partnership with his "partner" for approximately seven months weighs heavily against plaintiff in his effort to carry the present burden of proof. After a careful consideration of all the evidence, however, the Court finds in his favor that the seven months of silence are consistent with the intention, which he stated upon leaving Saudi Arabia, to remain in the United States on vacation for an extended period of time.

Plaintiff departed from the United States on April 15, 1963, and flew directly to Lebanon, where he and Abdullah Tariki entered into active partnership, as planned, until the partnership was dissolved late in 1963. While in Lebanon, plaintiff paid all his living expenses and received no away-from-home allowances. As required by the government of Lebanon, he took out a "residence permit" for a specified length of time.

After dissolving his partnership with Tariki because the venture had not been so successful as planned, plaintiff returned to the United States on December 1, 1963, for another vacation. He stayed at his house with his sister in San Angelo for the holiday season, then traveled to Kuwait and became actively engaged in the petroleum industry there. Plaintiff arrived in Kuwait on January 4, 1964, and remained there until August 10 of that year on which date he returned to the United States. His place of residence after August 10, 1964, is not in dispute. While in Kuwait in 1964, plaintiff's housing and transportation were furnished him by his employer company.

Plaintiff taxpayer filed his income tax returns for 1963 and 1964 and excluded certain earned income therein, claiming that he was a bona fide resident of a foreign county or countries within the meaning of section 911(a) during all of 1963 and until August 10, 1964. Plaintiff's 1964 return was audited by the Internal Revenue Service, which adjusted his 1964 income to include amounts earned abroad. The Internal Revenue Service subsequently denied plaintiff's claim for refund, presenting this cause of action.

## CONCLUSIONS OF LAW

Plaintiff's 1964 income is excludable, if at all, on the basis of section 911(a)(1). The Court has found above that for the eighteen months preceding August 10, 1964, plaintiff was present in a foreign country or countries for only approximately 440 full days, far

short of the 510 days required by section 911(a)(2).

■ Section 911(a)(1), on the other hand, does not require plaintiff's actual presence but only a finding that he was a "bona fide resident of a foreign country or countries" during the entire period in question, which uninterrupted period must include at least one entire taxable year. Taxpayer's 1962 and 1963 income is not in question here, but since he concedes that he was not a resident of a foreign country after August 10, 1964, he must establish that he was a foreign resident for all of 1963 in order to receive a pro rata exclusion [as provided by section 911(c)(1)(B)] for that portion of 1964 during which he was a foreign resident.

As in all tax refund suits in the United States District Court, plaintiff has the burden of proving that the tax in question was illegally and erroneously collected. The Court must decide each case under Section 911(a)(1) according to the particular facts in that case, in the light of all evidence which is presented.

■■ In addition to standards under section 911(a)(1), standards relevant to section 871 (relating to what constitutes residence or nonresidence of an alien in the United States) may be applied to a case involving section 911(a)(1). Regs. § 1.911–2(a)(2). As counsel for defendant has indicated, an alien, by reason of his alienage, is presumed to be a nonresident alien. Regs. § 1–871–4(b). This presumption, of course, may be overcome by the facts in a particular case.

■■ Treasury Regulations § 1.911–2(a)(2) provides that

though the period of bona fide foreign residence must be continuous and uninterrupted, once bona fide residence in a foreign country or countries has been established, temporary visits to the United States or elsewhere on vacation or business trips will not necessarily deprive the citizen of his status as a bona fide resident of a foreign country.

So the first question regarding plaintiff's status must be whether, prior to June 1962, plaintiff had established a bona fide residence in a foreign country or countries. The Court holds that he had clearly and demonstrably done so. At least since March 1958, plaintiff had pursued a foreign career and had made the Middle East his home. He had evinced no intention to return to the United States during that period and had taken no significant actions inconsistent with foreign residence. Any reasonable man would have concluded in June 1962 that he had established his home in a foreign country for an indefinite period of time. In this regard, the Court refers particularly to the eleven criteria established by the Seventh Circuit in Sochurek v. C.I.R., 300 F.2d 34, 38 (7 Cir. 1962), for determining the existence of foreign residence. Not all these factors need be present for a taxpayer to prove foreign residence. The Court holds, however, that Mr. Carpenter has satisfied most of these criteria. His intention to be a foreign resident prior to June 1962 is clear. He had established a home in a foreign country for an indefinite period. Although he seems not to have become involved in the social and cultural activities of his place of residence, his physical presence there was consistent with his employment. His resident status was in vivid contrast to the status of a transient or sojourner. He had no particular or discrete job assignment which could be completed within in a definite length of time.

■ Defendant's argument that plaintiff's failure to pay foreign income taxes deprives him of resident status is not persuasive. In fact, there is no indication that the purpose of section 911 was to avoid double taxation or to assure that every American be forced to pay taxes to some country. See David E. Rose, 16 T.C. 232 (1951), holding that taxpayer was an English resident although he paid no income taxes there. In fact, section 911 must be interpreted in light of its true legislative purpose, which was to encourage foreign trade by

encouraging foreign employment for citizens of the United States. Leigh White, 22 T.C. 585 (1954). To find in favor of plaintiff in the present case would be consistent with this legislative intent.

Since the Court therefore holds that plaintiff had clearly established himself as a foreign resident prior to his departure from Saudi Arabia in June 1962, the next question is whether his departure from Saudi Arabia at that time constituted an abandonment of his foreign residence status which he had at the time of his departure.

This Court holds that if it is necessary to fix a specific country of residence for taxpayer in the instant case, then as a matter of law taxpayer was a resident of Lebanon from the time he left Saudi Arabia on June 22, 1962, until he arrived in Lebanon on April 14, 1963. In fact, plaintiff spent some time in Lebanon on his way from Saudi Arabia to the United States. The Court holds that although plaintiff was not present in Lebanon for the period in question, the oral agreement between plaintiff and Abdullah Tariki, coupled with taxpayer's intent and subsequent actions, establishes "residence" in Lebanon during the temporary visit to the United States and negates any inference of residence in the United States. This is especially so in view of his long period of employment and residence in the area of the Middle East.

■ But even if the facts were not sufficient to establish plaintiff as a resident of the particular country of Lebanon for the period in question, the Court would hold that consistent with the purpose and intent of section 911(a)(1), taxpayer evinced a sufficient intent, supported by his actions, to remain a resident of the Middle East and not of the United States. The defendant suggests that in order to establish a section 911(a)(1) exclusion, a taxpayer must demonstrate at every moment during the taxable year in question that he is a resident of a particular foreign country to the exclusion of every other country including the United States. This argument is only partially sound and misplaces its emphasis. For defendant has failed to point out that the statute and the regulations provide that a taxpayer may enjoy an exclusion if during the taxable period in question he is a resident of a foreign country *or countries*.

■ It would not be correct, however, to phrase the question in such a way as to ask whether a taxpayer is a resident of the United States and then to conclude that a negative answer establishes him as a resident of a "foreign country or countries," for a taxpayer (while always having a domicile) does not necessarily at all times have a residence. *Leigh White, supra.* Nevertheless, it is not at all clear that a taxpayer need point at every moment to a definite country of residence if it is evident that at every moment his intent, supported by his actions, indicates a residence in some country other than the United States. This is particularly true where, as in the present case, the taxpayer evinces an intention to remain a resident, without interruption, of a relatively localized area of the world such as the Middle East, and where, as here, his intent is to continue such status by a residence in Lebanon in his new venture.

This Court must not be understood to read the statutory phrase "country or countries" to mean that a taxpayer may be a resident of more than one country at the same time. The Court holds nevertheless, for reasons set forth below, that for purposes of section 911(a)(1), plaintiff Carpenter was a resident of a foreign country or countries continuously from March 1958 to August 10, 1964. During this entire period it was his intention, confirmed by his actions and activities, to remain a resident of a particular Middle Eastern country or countries.

■ The purpose of the statute is carried out by such a holding, for foreign trade is fostered by a taxpayer's business activity in several countries, or

in a specified geographical area of the world, as much as it would be by that taxpayer's remaining in one specific country. The Court holds, therefore, that as a matter of law plaintiff's residence in the Middle East was not terminated by his visit, or vacation, in the United States in 1962–63.

The Court is aware that the period of absence from the taxpayer's otherwise foreign residence, approximately ten months in the present case, is extraordinarily long in view of the reported cases and makes plaintiff's burden of proof more difficult. Yet Congress has not seen fit to establish a maximum period beyond which foreign residence is conclusively or even presumptively terminated during a temporary absence, and it is not within the province of this Court to establish such a period of limitations.

 The intent of the taxpayer plays perhaps the most important part in determining the establishment and maintenance of foreign residence and certainly a more important part than does the mere length of time involved. Thus in Robert A. Henningsen, 26 T.C. 528 (1956), the Tax Court of the United States placed heavy reliance on intention in holding for the government. Taxpayer's tour of duty had ended, and he returned to the United States for an indefinite period awaiting another tour of duty. Unlike plaintiff in the present case, Henningsen had no plan or prospect for further employment abroad but merely an intention to return abroad when a business or employment opportunity presented itself. The Tax Court held that a taxpayer may not become a bona fide resident of a sovereignty different from that in which he has established such residence by a "mere floating intention" to do so in the indeterminate future. The Court did not foreclose the possibility, however, that a taxpayer may so establish a residence in a different country, despite an intervening trip to the United States, if as in the present case he has laid definite plans and has entered into a contractual arrangement to engage in business, within a reasonably foreseeable time, in the new country of residence.

Defendant places much reliance upon the case of Anne Laughlin, 27 T.C. 23 (1956), denying taxpayer an exclusion. The facts in *Anne Laughlin* are readily distinguishable, however, from those in the present case. Taxpayer, employed abroad by the United Nations, became ill and was transferred to the United States in December 1947. Her employment with the United Nations was terminated in January 1948. The Tax Court, emphasizing taxpayer's intention, held that her foreign residence was terminated in December 1947 because at that time there was no understanding or assurance that she would return abroad:

> This case is distinguishable from others cited in which an American citizen had some indefinite employment with some foreign country and, with assurance of retaining that same employment, temporarily visited the United States with the intention of going away again to continue that indefinite employment abroad.

*Id.* at 26. *Accord,* Leigh White, 22 T.C. 585 (1964), where taxpayer had merely a hope or possibility of returning abroad to a different country.

Much more similar to the present fact situation is Leonard Larsen, 23 T.C. 599 (1955). There, taxpayer sought no employment in the United States, with one minor exception, after 1939. He worked in Saudi Arabia and Lebanon, his work being of a continuing nature and of indefinite duration. Taxpayer took several vacations in the United States. On November 28, 1949, he departed for the United States, having discussed his return before leaving Saudi Arabia. He returned to Saudi Arabia on January 16, 1950. The Tax Court held that his foreign residence was uninterrupted despite the fact that several employment contracts were involved. The court cited with approval the Fifth Circuit case of Swenson v. Thomas, 164 F.2d 783 (1947). Distinguishable from both *Swen-*

*son* and *Larsen* is Seeley v. C.I.R., 186 F.2d 541 (2d Cir. 1951), involving a taxpayer who left England in June 1944, returned to the United States for a four-month vacation followed by a job in the United States, then in August 1945 went to Sweden to take up a job which he had formerly held. The court held that the interim "vacation" was not part of the English residence because taxpayer had left England with no intention of returning there and with no definite prospect for foreign employment. Other cases approving of extraordinarily long vacations in light of section 911 include Gerald L. Walker, T.C. Memo 1957–40, and Frederick F. Hack, 33 T.C. 1089 (1960).

 The Court holds, therefore, that plaintiff's intention at the time he left Saudi Arabia, his inactivity while in the United States, and his subsequent return as planned to Lebanon, establish as a matter of law that the visit to the United States in 1962–63 did not interrupt or terminate the residence in a foreign country or countries begun no later than March 1958. This holding applies as well to the vacation of taxpayer in the United States from December 1, 1963, to January 4, 1964. This vacation was of much shorter duration than the previous one and was apparently for the purpose of a brief holiday respite and visit with plaintiff's sister. Thus if it is held that plaintiff was a resident of Lebanon and Kuwait continuously from April 15, 1963, to August 10, 1964, then clearly the second vacation did not terminate or interrupt this foreign residence but in fact assists taxpayer in establishing the practice of periodic temporary vacation visits to the United States.

 The only remaining question therefore is whether plaintiff was a resident of Kuwait from January 4, 1964, to August 10, 1964. The Court holds that he was, as a matter of law. Defendant emphasizes the fact that plaintiff lived and ate in company-furnished facilities and took no part in community activities. While these factors lend weight to defendant's case, they are not dispositive.

 It is not necessary for a taxpayer to establish a fixed, permanent, personal place of abode in order to be a "resident" of a foreign country. In Swenson v. Thomas, *supra*, taxpayer was constantly on the move as part of his job in Columbia. The Fifth Circuit nevertheless held that he was a resident of that country *despite* his intention to return at a later time to the United States. The present plaintiff has demonstrated to the Court's satisfaction, in uncontradicted testimony, that he intended upon his return to Lebanon, and later to Kuwait, to continue his well established and thoroughly documented foreign career. He has successfully met most of the criteria set forth in Sochurek v. C.I.R., *supra*, including intention; temporary establishment of a foreign home; physical presence consistent with employment; non-transient status; and indefinite duration of employment.

It is clear as well from the evidence, and the Court so holds, that plaintiff's various trips and residences were undertaken in good faith and by no means for purposes of tax evasion.

Therefore, since plaintiff was as a matter of law a resident of a foreign country or countries from 1958 including all of 1963, and until August 10, 1964, he is entitled under 26 U.S.C. § 911(a)(1) to an exclusion from income for the amounts received from without the United States during 1964 in accordance with the rules contained in 26 U.S. C. § 911(c)(1)(B).

Judgment will be entered granting plaintiff the relief sought and taxing costs against defendant.

The attorneys in the present case are hereby instructed to prepare a judgment consistent herewith providing for the appropriate award in plaintiff's behalf, including interest.