CAROL PATTON HAGERTY (Formerly Mrs. Carol Patton), [1] Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent Hagerty v. Commissioner
Docket Nos. 4034-70, 4792-70, 5497-70
United States Tax Court
T.C. Memo 1973-162; 1973 Tax Ct. Memo LEXIS 125; 32 T.C.M. (CCH) 788; T.C.M. (RIA) 73162; July 24, 1973, Filed *125 During 1963 and the major portion of 1964 petitioners traveled throughout Europe selling the products of the American corporation. In October of 1964 they returned to Europe, settling in France, to assist their customers in merchandising the products sold in the earlier years, to create and test new marketing and advertising ideas for the American corporation and to form a European sales office which would take over the selling activities of the American corporation. Petitioners returned to the United States in June of 1966. Held: Petitioners were bona fide residents of a foreign country for one entire taxable year and the income received while residents of France was attributable to services performed in a foreign country and therefore such income is excludable under sec. 911. Stephen A. Seall and James F. Thornburg, for the petitioners. Robert P. Ruwe, for the respondent. 2 STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: The Commissioner determined deficiencies in petitioners' Federal income taxes as follows: Petitioner
Docket No.
Year
Amount Carol Patton Hagerty
4034-70
1966
$3,894.03
Carol Patton Hagerty
4792-70
1965
5,620.00
William J. Hagerty
5497-70
1966
4,167.16
*126 The sole issue presented for adjudication relates to whether the income received by petitioners during the years in issue qualifies under section 911[2] as earned income from sources without the United States and is thereby exempt from taxation. This decision rests on: (1) Whether petitioners were bona fide residents of a foreign country for an uninterrupted period which includes an entire taxable year, and (2) Whether the payments by W. J. Hagerty & Sons, Ltd., Inc., an American corporation, to petitioners constitute earned income attributable to personal services performed in a foreign country. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation, together with the exhibits attached thereto, are incorporated herein by this reference. 3 Carol Patton Hagerty (formerly Mrs. Carol Patton) (hereinafter referred to as Carol or petitioner) filed her 1965 and 1966 Federal individual income tax returns with the district director of internal revenue at Indianapolis, Indiana. William J. Hagerty (hereinafter referred to as Hagerty or petitioner) filed his 1966 *127 Federal individual income tax return with the district director of internal revenue at Indianapolis, Indiana. At the time of the filing of the petitions herein the petitioners resided in South Bend, Indiana. W. J. Hagerty & Sons, Ltd., Inc. (hereinafter referred to as the American corporation) was incorporated under the laws of the State of Indiana on February 1, 1961. During the years in issue the American corporation engaged in the business of selling silver polish and related items (hereinafter sometimes referred to as the Hagerty Products), which had been originated by Hagerty's mother and father. From the time of its incorporation until August 11, 1964, Hagerty was the president and treasurer of the American corporation. Thereafter he became chairman of the board with his brother, M. Patrick Hagerty (hereinafter referred to as Patrick) assuming the position of president and his mother, Mary Helena Hagerty (hereinafter referred to as Mary) accepting the post of secretary. In addition to himself, his 4 brother and mother, various other relatives were also employed by the American corporation. The outstanding stock of the American corporation consisted of 10 shares which were *128 owned by petitioner from February 1961 through December of the same year, at which time said shares were transferred pro rata to the grandchildren of petitioner's father. Whenever a new grandchild was born, the original 10 shares were redivided and reissued. During 1963 and 1964, Hagerty and Carol traveled extensively throughout Europe to merchandise the silver polish, tarnish preventive, and related products of the American corporation to European silversmiths. Carol was Hagerty's secretary and administrative assistant. The American corporation's European sales during this 2 year period totaled approximately $915,000. Sales for 1963 and 1964 may be summarized as follows: Customer
Gross Sales for 1963
Sales Credits
Net Sales Van Kempen & Begeer - Holland
$305,447.22
$57,809.00
$247,638.22
Van Kempen & Begeer - Belgium
11,840.00
11,840.00
Van Kempen & Begeer - Germany
50,924.80
50,924.00
Van Kempen & Begeer - Swiss
7,488.00
7,488.00
McArthur - Ireland
1,728.00
136.40
1,591.60
Christofle - France
1,321.63
1,081.63
240.00
Kronen-Denmark
8,064.00
186.10
7,877.90
Guldsmeds - Sweden
48,928.56
48,928.56
Olafsson - Iceland
678.00
678.00
$436,420.21
$59,213.13
$377,207.08 5 Customer
Gross Sales for 1964
Sales Credits
Net Sales Van Kempen & Begeer - Holland
$191,169.80
$103,415.52
$87,754.28
Van Kempen & Begeer - Belgium
45,300.00
45,300.00
Van Kempen & Begeer - Germany
40,960.00
40,960.00
Van Kempen & Begeer - Swiss
15,691.30
15,691.30
Van Kempen & Begeer - Austria
2,928.28
2,928.28
David Anderson - Norway
40,838.20
40,838.20
Christofle - Italy
2,464.80
1,040.92
1,423.88
McArthur - Ireland
2,289.60
545.76
1,743.84
Hopeakeskus - Findland
12,451.80
84.73
12,367.07
Christofle - France
24,105.00
24,105.00
Kronen - Denmark
17,828.28
339.10
17,489.18
Guldsmeds - Sweden
98,259.44
98,259.44
Olafsson - Iceland
1,012.05
1,012.05
$495,298.55
$105,426.03
$389,872.52
The *129 credits issued were due in part to the return of the merchandise to the American corporation. The American corporation did not receive payments for the goods sold until its customers conveyed the products to their retail dealers. The accounts receivable reflected on the American corporation's books as a result of the 1963 and 1964 sales are noted as follows: Customer
Accounts Receivable as of Dec. 31, 1964 Van Kempen & Begeer
$68,182.52
David Anderson
32,870.20
Christofle - Italy
1,140.00
McArthur
1,743.84
Hopeakeskus
6,624.17
Christofle - France
24,105.00
Kronen
2,681.00
Guldsmeds
98,259.44
Olafsson
334.05
$235,940.22 6 The accounts receivable representing 1963 and 1964 sales were substantially paid by November 9, 1965. On October 8, 1964 and October 27, 1964, respectively, Hagerty and Carol traveled to Europe to assist their customers in merchandising the products sold in 1963 and 1964 through the creation of various advertising programs, so as to stimulate payment of the yet unpaid accounts, to create and test new marketing and advertising ideas for the American corporation, to form a European sales office which would take over the selling activities of the American corporation, and generally *130 to give the European customers better service. On first arriving in Europe, Hagerty, for approximately 6 to 8 weeks, traveled throughout the continent as a salesman. Thereafter in December of 1964, he, along with Carol and their two children (one from Carol's previous marriage) settled on the French Riviera. They first acquired an apartment in Cannes but shortly thereafter moved to a home a short distance away in La Napoule, France. They intended to remain for at least 1 year. From December 1964 until their permanent return to the United States on June 25, 1966, petitioners lived in a rented home or apartment. The children attended school and the petitioners generally became involved in community life. They formed friendships with the people of the village 7 and participated in various social and cultural events. Hagerty maintained French bank accounts. Petitioners made no statements to French public officials that they were not residents of France. On January 1, 1965, Hagerty established a proprietorship which sold Hagerty products in Europe until May 14, 1965. At that time he formed W. J. Hagerty & Sons, Ltd., Inc., Treuunternehmen Reg. (hereinafter the Trust) a Liechtenstein *131 Trust which assumed the European selling activities. Of approximately $344,000 of Hagerty products sold in Europe during 1965 no more than $12,000 was attributable to the American corporation. During the period that petitioners resided in Europe they rendered administrative, promotional, merchandising, marketing and advertising services to their European customers on behalf of the American corporation as well as the newly formed Trust. Specifically, with regard to the American corporation, they administered the making of adjustments and credits due to faulty products, originated and tested advertising campagins and sales contests, initiated letter-writing campaigns from European to American customers and created companion products. In addition, petitioners rendered substantial services to the American corporation during that same 8 period by advising and counseling the American corporation with respect to the promotional, merchandising, marketing and advertising programs which they were developing and utilizing in Europe so that the American corporation could in turn utilize such programs in the United States' market. From October 1964 to June of 1966 Hagerty returned to the United *132 States on three occasions; in May of 1965 for approximately 2 weeks, from October 7, 1965 to November 26, 1965 and in May of 1966, remaining for an additional 2 weeks. Carol traveled to the United States from November 5 to November 27, 1965, returning to Europe with Hagerty. Hagerty's trips to the United States were prompted by a desire to see his family, render services to the American corporation and to meet with representatives of the Internal Revenue Service who were in the process of investigating the activities of the American corporation. Carol, during her stay in South Bend, also worked for the American corporation. In November of 1965, while in the United States, Hagerty stated before the intelligence division of the Internal Revenue Service, with regard to his name and address that "[my] name is William Joseph Hagerty, 1820 Portage Avenue, South Bend, Indiana, Zip 46616." Petitioners intended to return to Europe after each visit to the United States. 9 Hagerty and Carol returned to the United States on June 25, 1966, due to the American corporation's substantial drop in sales during the previous year. Subsequently, Hagerty worked strenuously to improve the sales activities *133 and financial condition of the American corporation. Carol did little if any work for the American corporation as she was pregnant. The petitioners, following their June arrival in South Bend, did not intend to return to Europe. For the year ended December 31, 1965, Carol received a salary from the American corporation of $21,200. In 1966 she reported income paid by the American corporation of $10,000. Hagerty's compensation for 1966 totaled $30,000. The salaries (with the exception of $1,200 received by Carol in 1965) for both years were awarded at board of directors' meetings held November 23, 1965 and December 23, 1966, respectively. The payments were made by the transfer of bonds held by the American corporation in its Switzerland account since the corporation had a shortage of cash. The Federal income tax returns of petitioners for 1966 indicate that Carol and Hagerty received "Liechtenstein Trust Corporation [Distributions]" of $13,000 and $6,000 respectively. Carol excluded $20,000 of the $21,200 received in 1965 from her income. Both petitioners excluded 176/365 (allocable portion of the year spent in Europe) of the total remuneration received in 1966. 10 OPINION *134 We are required to determine whether the income received by Carol during 1965 and 1966, and the income received by Hagerty in 1966 is excludable under the provisions of section 911. The statute provides in pertinent part: SEC. 911. (a) GENERAL RULE. - The folloiwng items shall not be included in gross income and shall be exempt from taxation under this substitle: (1) Bona fide resident of foreign country. - In the case of an individual citizen of the United States who establishes to the satisfaction of the Secretary or his delegate that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) which constitute earned income attributable to services performed during such uninterrupted period. The amount excluded under this paragraph for any taxable year shall be computed by applying the special rules contained in subsection (c). Respondent contends that petitioners were not bona fide residents of a foreign country for one entire taxable year, and further that the income received does not *135 constitute earned income attributable to services performed in a foreign country. Petitioner, to the contrary, maintains that the section 911 requirements have been met. The question of residence is solely one of fact. Frederick F. Hack, 33 T.C. 1089 (1960). "[Each] new case must be decided on the basis of its own unique attendant 11 circumstances." Donald H. Nelson, 30 T.C. 1151, 1153 (1958). While the statute does not define the phrase "bona fide resident", the regulations at 1.911-2(a) (2) [3] direct us to section 871 and its applicable regulations for guidance. Section 871 concerns the taxation of nonresident aliens present in the United States. Regulation 1.871-2(b) which contains the pertinent provisions applicable herein, required that the individual not be "a mere transient or sojourner." Such is determined "by his intentions with regard to the length and nature of his stay." Further, "[one] who comes * * * for a definite purpose which in its nature may be promptly accomplished is a transient; but if his purpose is * * * such * * * that an extended stay may be necessary for its accomplishment, * * * he becomes a resident, though it may be his intention at all times 12 to *136 return to his domicile abroad when the purpose for which he came has been consummated or abandoned." [4] *137 The Court of Appeals for the Seventh Circuit in Sochurek v. Commissioner, 300 F. 2d 34 (C.A. 7, 1962) revg. 36 T.C. 131 (1961), compiled a list of factors considered in determining whether an individual has satisfactorily established his claim of a bona fide foreign residence. They include: *138 13 (1) intention of the taxpayer; (2) establishment of his home temporarily in the foreign country for an indefinite period; (3) participation in the activites of his chosen community on social and cultural levels, identification with the daily lives of the people and, in general, assimilation into the foreign environment; (4) physical presence in the foreign country consistent with his employment; (5) nature, extent and reasons for temporary absences from his temporary foreign home; (6) assumption of economic burdens and payment of taxes to the foreign country; (7) status of resident contrasted to that of transient or sojourner;
(8) treatment accorded his income tax status by his employer; (9) marital status and residence of his family; (10) nature and duration of his employment; whether his assignment abroad could be promptly accomplished within a definite or specified time; (11) good faith in making his trip abroad; whether for purpose of tax evasion. Applying these factors to the instant cases, it is our conclusion that on balance, they favor a holding that both petitioners were bona fide residents of France for a period that included an entire taxable year. Petitioners traveled *139 to Europe to assist their customers in selling the Hagerty products so as to stimulate the payment of the almost $240,000 of accounts receivable, to create and test various advertising programs and to form a European sales office. Clearly these goals were not likely to be accomplished in a short period of time. Hagerty's own correspondence indicated his intention to remain in Europe for at least 1 year. Carol and Hagerty departed for Europe in October of 1964 settling in France during the month of December. They 14 did not permanently return to the United States until June of 1966. During that period they rented a home, opened several bank accounts, sent their children to school and generally became involved in community life. Finally, we note that the parties' ultimate return in 1966 was not a planned event but rather was caused by the American corporation's drastic decline in sales. Thus, we conclude that petitioners intended to become foreign residents and were not mere transients. Respondent notes however that petitioners have failed to introduce evidence with regard to the payment of foreign income taxes. Such fact is relevant but not controlling. Section 911 was enacted *140 to aid the American businessman abroad. There is nothing to indicate that the statute's purpose was to avoid double taxation. Leigh White, 22 T.C. 585 (1954); David E. Rose, 16 T.C. 232 (1951); Carpenter v. United States, 348 F. Supp. 179 (N.D. Tex., 1972); see Scott v. United States, 432 F. 2d 1388 (Ct. Cl., 1970), for a full discussion of the legislative purpose and history. We further note that petitioners' short trips to the United States do not deprive them of a foreign residence. As respondent's regulations state: 15 Sec. 1.911-2(a) (2). What constitutes bona fide residence. Though the period of bona fide foreign residence must be continuous and uninterrupted, once bona fide residence in a foreign country or countries has been established, temporary visits to the United States or elsewhere on vacation or bsuiness trips will not necessarily deprive the citizen of his status as a bona fide resident of a foreign country. Such is consistent with the applicable legislative history. See Senate Rept. No. 1631, 77th Cong., 2d Sess. (1942), p. 116. The facts noted above indicate that petitioner's visits were motivated by business necessities and a desire to see Hagerty's family. *141 They always intended and did in fact return to Europe. We therefore conclude that the various trips do not adversely affect our conclusion regarding the parties' foreign residence. See Carpenter v. United States, supra; David E. Rose, supra, and the cases cited therein. We must next decide whether the income recieved by petitioners was earned while in a foreign country. Preliminarily we note that: An amount constituting earned income which is derived from sources without the United States shall not be included in gross income solely because it is received within the United States, since the place of receipt is immaterial in determining whether any items shall be excluded from gross income. [Sec. 1.911-2(c) (4)] Andrew O. Miller, Jr., 52 T.C. 752 (1969). 16 Respondent contends however that the payments received by the petitioners from the American corporation during the years in issue do not represent income attributable to foreign services. In support of this contention he relies on the fact that the American corporation substantially reduced its European selling activities prior to 1965 and therefore, concludes respondent, the American corporation's payments must represent activities *142 performed in the United States (petitioners' European activities were on behalf of the proprietorship or Trust). We cannot agree.While it is true that the American Corporation's European selling activities declined greatly at the end of 1964, it had at that time almost $240,000 of outstanding accounts receivable. The record indicates strenuous activities on the part of petitioners to assist their customers in merchandising the products sold in 1963 and 1964 in an effort to stimulate the payment of these unpaid accounts. While such amounts were at least almost fully collected by the conclusion of 1965, the evidence presented further demonstrates petitioners' continuous efforts to create and test new forms of marketing and advertising programs as well as their attempt to increase the American corporation's goodwill through the promotion of various letter writing campaigns from European customers to their American counterparts. 17 While there can be little doubt that petitioners devoted some efforts to the selling of products on behalf of the European Trust, we feel the record as a whole clearly demonstrates substantial activities in Europe by petitioners on behalf of the American *143 corporation. We therefore conclude that the salary received did in fact represent income attributable to foreign services. The Court must next determine what portion of the salary received is excludable under section 911. Regulation 1.911-2(c) (4) provides that no amount received from services performed within the United States is excludable under section 911. [5] *144 The above cited regulation refers to sections 861 through 864 and the regulations thereunder with regard to a proper allocation. Regulation 1.861-4(b) states that, if no accurate allocation can be made, income earned within 18 the United States shall be determined by a ratio of days' labor performed within the United States to the total number of days' services provided. [6] We believe that our findings of fact are sufficiently detailed to permit the parties to work out the mathematics of the allocation in a Rule 50 computation. Decisions will be entered under Rule 50. Footnotes
1. Cases of the following petitioners are consolidated herewith: Carol Patton Hagerty (Formerly Mrs. Carol Patton), docket No. 4792-70, and William J. Hagerty, docket No. 5497-70. ↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended, unless other-wise indicated. ↩
3. Sec. 1.911-2(a) (2) provides: (2) What constitutes bona fide residence. Though the period of bona fide foreign residence must be continuous and uninterrupted, once bona fide residence in a foreign country or countries has been established, temporary visits to the United States or elsewhere on vacation or business trips will not necessarily deprive the citizen of his status as a bona fide resident of a foreign country. Whether the individual citizen of the United States is a bona fide resident of a foreign country shall be determined by the application, to the extent feasible, of the principles of section 871↩ and the regulations thereunder, relating to what constitutes residence or nonresidence, as the case may be, in the United States in the case of an alien individual. 4. Sec. 1.871-2(b) states: (b) Residence defined. An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in it nature may be promptly accomplished is a transient; but, if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances. 5. Sec. 1.911-2(c) (4). No amounts received for services performed within the United States shall be excluded from gross income under such paragraphs. For the allocation or segregation as between sources wtihin, and sources without, the United States in the case of compensation for labor or personal services, see sections 861, 862, 863 and 864↩ and the regulations thereunder. 6. Sec. 1.861-4(b).Amount includible in gross income. If a specific amount is paid for labor or personal services performed in the United States, that amount (if income from sources wtihin the United States) shall be included in the gross income. If no accurate allocation or segregation of compensation for labor or personal services performed in the United States can be made, or when such labor or service is performed partly within and partly without the United States, the amount to be included in the gross income shall be determined by an apportionment on the time basis; that is, there shall be included in the gross income an amount which bears the same relation to the total compensation as the number of days of performance of the labor or services within the United States bears to the total number of days of performance of labor or services for which the payment is made. ↩