T.C. Memo. 2010-91

UNITED STATES TAX COURT

MAHMOUD M. AND SIRI L. SOLTAN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22757-07.                    Filed April 29, 2010.

Mahmoud M. Soltan and Siri L. Soltan, pro se.

Blaine Holiday, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, Judge:  On July 6, 2007, respondent (the
Commissioner of Internal Revenue, whom we refer to here as the
IRS) mailed petitioner Mrs. Siri L. Soltan notices of deficiency
for the taxable years 2000, 2001, 2002, and 2005.  In those
notices, the IRS determined the following deficiencies in income

tax, with additions to tax for late filing, late payment, and failure to pay estimated income tax:[1]

| | | Additions to Tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
| 2000 | $1,534 | $345.15 | $383.50 | -0- |
| 2001 | 979 | 220.28 | 244.75 | -0- |
| 2002 | 971 | 218.48 | 237.90 | -0- |
| 2005 | 3,036 | 683.10 | 197.45 | $121.78 |

By separate notice also mailed on the same date to petitioner Mahmoud M. Soltan the IRS determined the following deficiency, and additions to tax for late filing, late payment and failure to pay estimated income tax:

| | | Additions to Tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
| 2005 | $3,374 | $759.15 | $219.31 | $135.33 |

The issues for decision affecting Mrs. Soltan are: (1) Whether she is liable for income tax on her wages earned in 2000, 2001, 2002, and 2005; (2) whether she is liable for the section 6651(a)(1) late-filing addition to tax for 2000, 2001, 2002, and 2005; (3) whether she is liable for the section 6651(a)(2) late-payment addition to tax for 2000, 2001, 2002, and 2005; and (4)

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

whether she is liable for the section 6654 failure-to-pay-estimated-tax addition to tax for 2005. The issues for decision affecting Mr. Soltan are: (1) Whether he is liable for income tax on his wages earned in 2005; (2) whether he is liable for the section 6651(a)(1) late-filing addition to tax for 2005; (3) whether he is liable for the section 6651(a)(2) late-payment addition to tax for 2005; and (4) whether he is liable for the section 6654 failure-to-pay-estimated-tax addition to tax for 2005.

## FINDINGS OF FACT

Some of the facts have been deemed established for purposes of this case in accordance with Rule 91(f).[2] We incorporate these facts into our findings by this reference. The Soltans are married and resided in Minnesota when the petition was filed.

In 1996, the Soltans operated a business from leased premises--before their landlord evicted them. Seeking to recover compensation for the eviction, the Soltans filed an insurance claim with the State Farm insurance company. The Soltans now claim that their loss from this eviction was deductible, and that

---

[2]At trial in St. Paul, Minnesota on February 10, 2009, the Soltans were orally ordered to show cause as to why proposed facts and evidence should not be accepted as established under Rule 91(f). On the same date, this Court made the order to show cause under Rule 91(f) absolute and deemed established the facts and evidence as set forth in the IRS's proposed stipulation of facts for purposes of this case. The Court also received into evidence Exhibits 1-J through 16-J, attached to the proposed stipulation of facts.

the loss produced a net operating loss that must be carried forward to the tax years at issue. Deductions for these losses would have presumably been reflected in income tax returns filed for 1996, but the Soltans did not file a return for that year. The eviction in 1996 is also significant, according to the Soltans, because they argue that the federal government was liable for their claim against State Farm and that this liability can be used to wipe out their federal tax obligations. The Soltans admit that their insurance claim was never reduced to an actual judgment against State Farm, much less against the federal government.[3]

---

[3]The Soltans submitted documents after trial that shed some light on their insurance claim against State Farm. The documents are summarized in the paragraph below. The documents do not, on their face, seem unreliable. However, we decline to re-open the record to admit these documents into evidence for reasons explained further below. Thus, the paragraph that follows is not incorporated in our official findings of fact.

The excluded documents suggest the Soltans operated a gift shop in the Radisson hotel building in St. Paul. The premises of the gift shop was leased from the landlord by Mr. Soltan. In 1996, the landlord evicted Mr. Soltan from the shop, thus impairing or wiping out the value of the business. To recoup this loss, the Soltans filed an insurance claim with their insurance company, State Farm. State Farm denied the claim repeatedly over the ensuing 12 years because it said that none of the provisions of the policy required State Farm to reimburse the Soltans for their loss. One provision of the policy protected the Soltans from suits by their tenants for wrongful eviction. But it did not cover the Soltans for the losses from being wrongfully evicted by their landlord. In 2009, Mr. Soltan attempted to reformulate the insurance claim to squeeze it into the wrongful-eviction provision of the insurance policy. Mr. Soltan told State Farm that he had subleased the shop to his wife
(continued...)

The Soltans did not file timely tax returns during the years at issue in this case. These years are: For Mrs. Soltan, 2000, 2001, 2002, and 2005; and for Mr. Soltan, the 2005 year.[4] Both Soltans submitted Form W-4s to their employers in which they certified that they were exempt from income tax withholding. As a consequence, no income tax was withheld from the Soltans' earnings for the years at issue. Mrs. Soltan earned the following wages during each year:

_____

[3](...continued)
and that he had wrongfully evicted his wife from the shop in 1996. Mr. Soltan urged State Farm to pay him money to compensate him for his wife's unfiled claim against him for wrongful eviction. Not surprisingly, State Farm rejected the reformulated claim.

In his trial testimony, Mr. Soltan gave a less comprehensible version of the off-the-record story we have pieced together above. He testified:

> When * * * [the landlord] seized * * * [the business] from me and not from her, but the insurance it cover her and it [did not] cover me. And since I wasn't covered she was the one that's covered by that policy, but so the only way we can receive it is if she blamed me for it because that's how they set up the insurance policy. So we filed a claim. We just waiting to receive our money from the insurance company because the insurance company had a subrogation issue with * * * [the landlord]. [sic]

[4]The record does not reveal whether Mr. Soltan filed returns for the taxable years 2000 through 2002.

| Year | Employer | Wages |
|------|----------|-------|
| 2000 | Giannis LLC | $12,206 |
| 2000 | Grazzi Italian Cafe, Inc. | 5,230 |
| 2001 | Giannis LLC | 15,983 |
| 2002 | Giannis LLC | 16,049 |
| 2002 | Kelber Catering, Inc. | 125 |
| 2005 | CSM Lodging Services, Inc. | 1,001 |
| 2005 | Kelber Catering, Inc. | 1,356 |
| 2005 | Bloomington Hotel, Inc. | 28,523 |

In 2005, Mr. Soltan earned wages of $817 from CSM Lodging Services, Inc., $1,362 from Kelber Catering, Inc., and $30,921 from Bloomington Hotel, Inc. The Soltans received each item of wage income above and received Forms W-2 reflecting all of the income.

On May 9, 2007, the IRS prepared substitute for returns pursuant to section 6020(b) for Mrs. Soltan for the 2000, 2001, 2002, and 2005 taxable years. It also prepared a substitute for return for Mr. Soltan for the 2005 taxable year. The filing status was listed as single in each substitute for return.

The IRS issued a separate notice of deficiency for each of those tax years on July 6, 2007, determining the deficiencies and additions to tax listed above.

Mrs. Soltan finally submitted Form 1040s, dated September 29, 2007, to the IRS for the taxable years 2000, 2001, and 2002. She listed her filing status as married, filing separately. The

Form 1040s contained zeroes in all boxes except for question marks placed in the wage and adjusted gross income boxes.  She wrote "EXEMPT STATUS ON EMPLOYER's W-4" in the exemptions section of the forms and she left blank the box in which a taxpayer claims the total number of exemptions.

The Soltans sent to the IRS a Form 1040X, Amended U.S. Individual Income Tax Return, for the 2005 taxable year in which they reported $63,983.87 of adjusted gross income, $10,000 of itemized deductions, and $53,983.87 of taxable income.  Both Mr. and Mrs. Soltan signed the Form 1040X, which the IRS received on September 10, 2007.  They left the filing status blank.  They wrote "EXEMPT STATUS" where the form requests the dollar amount associated with the number of exemptions claimed.  The Soltans also wrote "EXEMPT STATUS ON EMPLOYER's W-4's" in the section requesting the correct number of exemptions.  In the section entitled "Explanation of Changes", they stated:  "We did not file a tax return for tax year ending December 31, 2005.  We claimed 'EXEMPT STATUS' on our Employer's W-4's."

The Soltans filed a timely petition with this Court on October 3, 2007, in which they requested that the Court "[p]lease note the tax exempt status that was filed on the W-4's with our Employers."  They filed an amended petition on November 15, 2007 in which they explained:  "The relief that we request is that we receive a redetermination that we are not deficient in our income

tax for the above-referenced tax periods.  We claimed EXEMPT on our Employer's W-4 forms.  Therefore, Federal taxes were not withheld from our income."

This case was called from the calendar for the trial session of this Court on February 10, 2009, at St. Paul, Minnesota, and a trial was held.

OPINION

I.  <u>Deficiencies</u>

The Soltans bear the burden of proof as to the determination of the deficiencies contained in the notices.  See Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).  Section 61(a)(1) states that gross income includes compensation for services.  The Soltans earned the wages determined to be income in the notices of deficiency and received Form W-2s from their various employers reporting to the Soltans (and to the IRS) that they received the wages.  The Soltans proffer two arguments why they nevertheless have no tax liability for the tax years at issue.

A.  <u>Offset Argument</u>

First, the Soltans assert that their claim against State Farm should offset their federal tax liability because State Farm is reinsured by the U.S. Treasury.  But the Soltans submitted no evidence that they reduced their breach-of-contract claim to a judgment against State Farm, much less a judgment directly against the federal government.  To the contrary, they admitted

at trial that they were still dealing with State Farm through its internal claims process. This Court cannot decide offset claims against the federal government that require us to adjudicate underlying non-tax disputes that are outside of this Court's limited jurisdiction. Broemer v. Commissioner, T.C. Memo. 2009-72 (the Court cannot adjudicate an offset claim because it has no jurisdiction over tort claims against the U.S. government related to an alleged conspiracy); Watts v. Commissioner, T.C. Memo. 1995-196 (the Court cannot resolve an offset claim because it has no jurisdiction over a taxpayer's claim for back wages for purportedly serving as President of the United States); Akins v. Commissioner, T.C. Memo. 1993-256 (the Court cannot decide an offset claim because it has no jurisdiction over a taxpayer's claim that he sustained injury due to federal government's failure to enforce criminal laws), affd. without published opinion 35 F.3d 577 (11th Cir. 1994); Randall v. Commissioner, T.C. Memo. 1993-207 (the Court cannot adjudicate an offset claim because it has no jurisdiction over a taxpayer's claim for insurance reimbursement by a U.S. Government-owned medical insurer for medical services performed for an insured patient), affd. without published opinion 29 F.3d 621 (2d Cir. 1994). The Broemer Court explained, in the context of a tax collection case:

> The Tax Court is a Court of limited jurisdiction lacking general equitable powers. Commissioner v. McCoy, 484 U.S. 3, 7 (1987). While we may apply equitable principles in deciding matters over which we

are specifically granted jurisdiction, we may not exercise general equitable powers to expand that statutorily prescribed jurisdiction. <u>Woods v. Commissioner</u>, 92 T.C. 776, 784-787 (1989).

At the time of the CDP hearing petitioner's tort claims had not been liquidated or established. Evaluating the Appeals officer's decision to reject his offset argument would require us to determine the merits and value of the underlying claims. None of the cases petitioner cites give the Court jurisdiction to adjudicate torts. * * *

<u>Broemer v. Commissioner</u>, <u>supra</u>. We cannot render a decision on the merits of the Soltans' breach-of-contract claim and thus have no jurisdiction over their offset claim.

B. <u>Deduction for Loss of the Business and the Resulting Net Operating Loss</u>

The Soltans argue that the loss of their business on account of their eviction in 1996 entitled them a deduction under section 165(a) for the 1996 tax year, and that they had a net operating loss for 1996 that they should be permitted to carry over to the tax years at issue. They claim that the net operating loss exceeds their cumulative gross income in all of the tax years at issue.

A net operating loss occurs in a tax year when deductions, as modified by section 172(d), exceed gross income for that year. Sec. 172(c). Section 172(b)(1)(A), as in effect before the passage of the Taxpayer Relief Act of 1997, P.L. 105-34, 111 Stat. 788, provides that a net operating loss is first carried back 3 taxable years and then carried forward for 15 taxable

years.  The taxpayer may elect to waive the carryback but otherwise cannot choose the year in which to apply the loss.

We may determine the amount of a net operating loss for a year, even if an assessment of tax for that year is barred, in order to help determine the correct amount of a net operating loss carryover to the tax years at issue.  Sec. 6214(b) (the Court may consider facts related to other tax years in order to redetermine the amount of deficiency for the tax year at issue); Calumet Indus., Inc. v. Commissioner, 95 T.C. 257, 274 (1990).  Thus, we may determine the amount of the net operating loss in 1996, and can do so even if 1996 is a time-barred year, to allow us to determine the Soltans' tax liability for the years at issue.  These years are 2000, 2001, 2002, and 2005 for Mrs. Soltan, and 2005 for Mr. Soltan.

To claim any deduction, the taxpayer must identify the deduction and prove that he or she meets the requirements for claiming it.  INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Wilson v. Commissioner, T.C. Memo. 2001-139.  A taxpayer must maintain records sufficient to substantiate the amounts of deductions claimed and has the burden of proving that amount. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs.  If a taxpayer establishes that an expense is deductible

but is unable to substantiate the precise amount, we may estimate the amount, bearing heavily against the taxpayer whose inexactitude is of his own making (the "Cohan rule"). Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). The taxpayer must present sufficient evidence for the Court to form an estimate because without such a basis, any allowance would amount to "unguided largesse." Williams v. United States, 245 F.2d 559, 560-561 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Section 165(a) allows a deduction for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." The Soltans have failed to substantiate the amount or character of any loss. Under these circumstances the Soltans are not entitled to a deduction under section 165(a). Accordingly, we allow no net operating loss deduction to either petitioner for any tax year at issue. We sustain the IRS's deficiency determinations in the notices of deficiency for all of the tax years at issue.

II. Additions to Tax

The IRS bears the burden of production with respect to the additions to tax determined under sections 6651(a)(1) and (2) and 6654. Sec. 7491(c). This means that once the taxpayer files a petition alleging an error in the determination of an addition to tax, the taxpayer's challenge will succeed unless the IRS

produces evidence that the addition to tax is appropriate.  <u>Swain v. Commissioner</u>, 118 T.C. 358, 364-365 (2002).  Once the IRS has produced the evidence demonstrating that the addition to tax is appropriate, the taxpayer must provide the Court with sufficient evidence to convince the Court that the IRS's determination is incorrect.  <u>Higbee v. Commissioner</u>, 116 T.C. 438, 447 (2001).  The burden of proof remains on the taxpayer regarding various defenses that the taxpayer can assert in response to various additions to tax, such as that the taxpayer had reasonable cause for engaging in the conduct.  <u>Id.</u> at 446.

A.    <u>Section 6651(a)(1) Failure-To-File Addition to Tax</u>

The IRS determined that Mrs. Soltan was liable for the section 6651(a)(1) late-filing addition to tax for the tax years 2000, 2001, 2002, and 2005 and that Mr. Soltan was liable for the addition to tax for 2005.  Section 6651(a)(1) imposes an addition to tax for failing to file a return by the filing deadline (determined by taking into account any extensions), unless such failure is due to reasonable cause and not due to willful neglect.  The late-filing addition to tax is 5 percent of the net amount required to be shown as tax on the return for each month such failure continues, not to exceed 25 percent in the aggregate.  Sec. 6651(a)(1), (b)(1).  The five-percent addition to tax is reduced by the amount of the addition to tax under section 6651(a)(2) for late payment, that is, 0.5 percent for

each month in which both penalties apply.  Sec. 6651(c)(1).
Therefore, the effective late filing rate for the period in which
both additions to tax apply is 4.5 percent per month.  Sec.
6651(a)(1), (c)(1).

The Soltans admitted at trial that they did not file returns
for any of the years at issue until September 2007, long after
the expiration of the late-filing penalty periods applicable to
the tax years at issue.  Consequently, the IRS has met its burden
of producing evidence that the late-filing addition to tax should
be imposed for each of the tax years at issue.

The Soltans have not demonstrated that they have reasonable
cause for their failure to file timely returns.  At trial, Mr.
Soltan testified that "we always filed jointly for the last 25
years."[5]  Thus, the Soltans were familiar with their obligation
to file a return.  Mr. Soltan explained their failure to file:
"We were probably under the impression that since we were exempt
and there wasn't any withholding we maybe didn't see the need to
file a return."  The Soltans filled out Form W-4s claiming that
they were exempt from withholding because, for each tax year,
they certified that they expected to have no tax liability for
the year, and that they had no tax liability for the prior year.
These certifications were false.  They were based, according to

---

[5]We infer that Mr. Soltan meant that he and his wife filed
joint returns for the 25 years before 1996.  There is nothing in
the record to indicate that they filed timely returns after that.

the Soltans, on their supposed net operating loss and their unfiled insurance lawsuit against the federal government.  An individual taxpayer must file a return if gross income exceeds the threshold amount specified by section 6012(a)(1).  The Soltans undertook no steps to determine if they had an obligation to file.  They did not consult a tax professional.  See Huang v. Commissioner, T.C. Memo. 1997-257; sec. 1.6664-4(b)(1), Income Tax Regs.; see also Vezey v. United States, 84 AFTR 2d 99-6192, at 99-6194, 99-2 USTC par. 50,863, at 89,865 (9th Cir. 1999) ("some degree of diligence on the taxpayer's part is required"); Guterman v. Commissioner, T.C. Memo. 2008-283.  Even if we were to believe that the Soltans had honestly believed they did not have to file a return, their mistaken belief does not constitute reasonable cause.  See Henningsen v. Commissioner, 26 T.C. 528, 536 (1956) ("there is no showing that advice of counsel was in fact sought or relied upon.  Mere uninformed and unsupported belief by a taxpayer, no matter how sincere that belief may be, that he is not required to file a tax return, is insufficient to constitute reasonable cause for his failure so to file."), affd. 243 F.2d 954 (4th Cir. 1957).

The Soltans also argued that the couple could not file returns until they received payment on their insurance claim. Only then would they know the amount of their unreimbursed loss that they could claim as a section 165 deduction.  See sec.

1.165-1(d)(2)(i), Income Tax Regs. (taxpayer who suffers a deductible casualty loss and has a reasonable prospect of collecting reimbursement is barred from treating the loss as sustained until the year in which it can be ascertained with reasonable certainty whether reimbursement will be forthcoming). The Soltans were not relieved from their obligation to file tax returns. See sec. 6012(a)(1).

Finally, the returns filed in September 2007 contained zeros and question marks; this act demonstrates a continued unwillingness to comply with the law. The Soltans are therefore liable for the section 6651(a)(1) addition to tax for each tax year at issue.

B.    Section 6651(a)(2) Late-Payment Addition to Tax

The IRS determined that Mrs. Soltan was liable for the section 6651(a)(2) late-payment addition to tax for the tax years 2000, 2001, 2002, and 2005 and that Mr. Soltan was liable for the addition to tax for 2005. Section 6651(a)(2) imposes an addition to tax for failing to pay the tax shown on a return on or before the date prescribed for payment, unless such failure is due to reasonable cause and not due to willful neglect. Sec. 301.6651-1(a)(2), Proced. & Admin. Regs. The late-payment addition to tax is 0.5 percent of the net amount due at the beginning of each month for each month such failure continues, not to exceed 25 percent in the aggregate. Sec. 6651(a)(2), (b)(2). When a

taxpayer does not file a return, the IRS may create a substitute return. Sec. 6020(b). Such a return is treated as the return filed by the taxpayer for the purposes of the section 6651(a)(2) addition to tax. Secs. 6020(b), 6651(g)(2).

The Soltans have not paid their taxes for the years in dispute. They admit that they did not authorize the withholding of any income tax and that they did not make any estimated tax payments for the tax years at issue. They did not make any tax payments when they filed Form 1040s in September 2007.

The returns that the IRS prepared on the Soltans' behalf for each tax year at issue qualify as substitute for returns under section 6020(b). Consequently, the IRS has met its burden of production that the Soltans are liable for the late-payment addition to tax for the tax years at issue.

The Soltans have not demonstrated that they had reasonable cause for their failure to pay the tax shown on their substitute for returns. The Soltans were not correct that they had a net operating loss that would entirely offset their income tax liability or that they had a right to offset their entire income tax liability against an amount they merely believed the federal government owed them. Thus they were not correct that they had no tax liability for the years at issue. The Soltans did not consult a tax professional to discuss their obligation to pay income taxes in light of these theories. Their unsupported and

uninformed mistaken beliefs, even if honestly held, do not constitute reasonable cause. See <u>Henningsen v. Commissioner</u>, <u>supra</u> at 536. Therefore, the Soltans are liable for the section 6651(a)(2) additions to tax for the tax years at issue.

    C.    <u>Section 6654(a) Failure-To-Pay-Estimated-Tax Addition To Tax</u>

The IRS determined that the Soltans were each individually liable for the section 6654(a) addition to tax for failing to pay estimated income tax for the tax year 2005. The addition to tax is calculated by applying the section 6621 underpayment interest rate to the amount of the underpayment from the due date of each installment until April 15 following the close of the taxable year. Sec. 6654(a), (b)(2). The amount of the underpayment is (for calendar-year taxpayers) "the excess of * * * the required installment" less "the amount (if any) of the installment paid on or before the due date for the installment." Sec. 6654(b)(1). The "required installment" is due at four times during the year and is 25 percent of the "required annual payment." Sec. 6654(c)(1), (d)(1)(A). A "required annual payment" is equal to

> the lesser of--
>
> > (i) 90 percent of the tax shown on the return for the taxable year (or, if no return is filed, 90 percent of the tax for such year), or

> (ii) 100 percent of the tax shown on the return of the individual for the preceding taxable year.

Clause (ii) shall not apply if the preceding taxable year was not a taxable year of 12 months or if the individual did not file a return for such preceding taxable year.

Sec. 6654(d)(1)(B); <u>Wheeler v. Commissioner</u>, 127 T.C. 200, 210-211 (2006), affd. 521 F.3d 1289 (10th Cir. 2008). The Soltans did not file a 2005 return. Thus, the clause (i) amount is 90 percent of the tax liability for 2005. This tax liability for 2005 is at issue in this case, and our decision will fix the liability. It is more complicated to compute the clause (ii) amount, which is "100 percent of the tax shown on the return of the individual for the preceding taxable year." The "preceding year" is 2004, but there is no evidence in the record as to whether the Soltans filed a 2004 return, or if they did, the tax liability shown on the return. It was the IRS's burden to produce evidence of the tax shown on the 2004 return.[6] <u>Wheeler v. Commissioner</u>, <u>supra</u> at 210-212 ("respondent's burden of production under section 7491(c) [requires] him to produce evidence that petitioner [has] a required annual payment * * * under section 6654(d)".). We therefore hold that the Soltans are not liable for the section 6654(a) addition to tax for 2005.

---

[6]Alternatively, the IRS could have produced evidence that the Soltans filed no return for 2004. Sec. 6654(a)(1)(B) (clause (ii) not relevant if taxpayer did not file return for the preceding year). The IRS failed to produce such evidence.

III. <u>Motion to Reopen the Record</u>

The Soltans filed a motion to reopen the record on March 30, 2009 (after the trial) to introduce six documents into evidence, claiming they were essential to the issues raised in their brief. The six documents were:

(1) A copy of the business insurance policy issued by State Farm in the names of both Mr. and Mrs. Soltan for the period beginning on October 1, 1996, and ending on October 1, 1997;

(2) A judgment dated August 15, 1995, by the Mr. Soltan's landlord, Carlson Real Estate Company, against Mr. Soltan evicting him from the leased space the Soltans used to operate their gift shop;

(3) The first page of a Lease for retail space between Mr. Soltan and Carlson Real Estate Company, dated May 8, 1989, for the term beginning on May 5, 1989, and ending on May 4, 1990 (signature page was not attached);

(4) A Lease Extension and Modification Agreement between Mr. Soltan and Carlson Real Estate Company, dated April 9, 1990, extending Mr. Soltan's lease from May 5, 1990, until May 4, 1995;

(5) A letter, dated July 15, 2002, from Lee J. Smiertelny, a claims manager with State Farm, to Mr. Soltan; and

(6) A letter, dated January 23, 2009, from Mr. Soltan to Edward B. Rust, Jr., President of State Farm.

In its objection to petitioners' motion to reopen the record, the IRS argues that the standing pretrial order required the parties to exchange documents they expected to use at trial at least 14 days before the first day of the trial calendar.  The IRS argues further that

> the evidence at issue is not newly found matter which the petitioners were previously prevented from producing.  It is also not some relevant and material event that has transpired subsequent to the trial. Petitioners had numerous chances to provide the evidence at issue prior to trial and at trial and repeatedly refused and failed to do so.

The IRS objects to the introduction of the evidence on the grounds that the documents are irrelevant and not authenticated. It also states that to admit the letter to Rust into evidence would amount to "additional testimony without an opportunity for cross-examination" because it was dated 18 months after the notices of deficiency were issued in this case.  The IRS objects to admission of the letter by Smiertelny on the grounds of hearsay, as its author never testified in this case.

Reopening the record for the submission of additional evidence lies within the discretion of the Court.  Butler v. Commissioner, 114 T.C. 276, 286-287 (2000) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 331 (1971)).  It is the general policy of this Court "to try all of the issues raised in a case in one proceeding to avoid piecemeal and protracted litigation."  Link v. Commissioner, T.C. Memo. 2006-

146.  We have recognized that "Proper judicial administration demands that there be an end to litigation and that bifurcated trials be avoided."  Cloes v. Commissioner, 79 T.C. 933, 937 (1982).  Thus, this Court "will not grant a motion to reopen the record unless, among other requirements, the evidence relied on is not merely cumulative or impeaching, the evidence is material to the issues involved, and the evidence probably would change the outcome of the case."  Butler v. Commissioner, supra at 287; Coleman v. Commissioner, T.C. Memo. 1989-248.  The IRS makes legitimate objections to the lack of authenticity with respect to all of the documents.  Fed. R. Evid. 901.  Even if we were to ignore such objections, admission of the documents into evidence would not change the outcome of the case in favor of the Soltans. We therefore shall deny the Soltans' motion to reopen the record.

In reaching our holdings here, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

An appropriate order and decision will be entered.